[L.A. No. 29740.   In Bank.   July 30, 1970.]

EUGENE C. HINMAN, Plaintiff and Appellant, v.
WESTINGHOUSE ELECTRIC COMPANY, Defendant and Respondent;
CITY OF LOS ANGELES, Intervener and Appellant.

## COUNSEL

Frank R. Brown for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, John A. Daly, George J. Franscell, Assistant City Attorneys, and Nowland C. Hong, Deputy City Attorney, for Intervener and Appellant.

Morgan, Wenzel, Lynberg, Stearns & Morris, Bruce L. Nelson and John P. McNicholas for Defendant and Respondent.

## OPINION

**PETERS, J.**—In this action for damages for personal injuries, plaintiff Eugene C. Hinman, an intervener, City of Los Angeles, appeal from a judgment for defendant Westinghouse Electric Company entered after a jury verdict and from an order denying motions for judgment notwithstanding the verdict.[1]

Plaintiff, a Los Angeles policeman, was standing on the center divider of a freeway inspecting a possible road hazard when he was struck by a car driven by Frank Allen Herman, an employee of defendant Westinghouse.[2] As a result of the accident he received permanent injuries. The city paid his medical expenses and disability pension.

---

[1] Appeals from an order denying motions for new trial are dismissed.

[2] Herman, who was named as a defendant in this action, was dismissed for failure to make return of summons within three years.

At the time of the accident, Herman was employed by Westinghouse as an elevator constructor's helper and was returning home from work from a job site. He had been working for Westinghouse for about four months. His work was assigned from the Westinghouse office. He did not go to the office before or after work but instead went from home directly to the job site and after work returned home from the job site. The particular job on which Herman was working was not completed at the time of the accident, and he would ordinarily return to the job site until the job was completed or he was told not to return.

The union contracts under which Herman worked provided for the payment of "carfare" and travel time in certain circumstances depending on the location of the job site in relation to the Los Angeles City Hall. As to this job, which was 15 to 20 miles from the city hall, Herman received an hour and a half per day as his round-trip travel time and $1.30 for his travel expense. The employer had no control over the method or route of transportation used by Herman.

The trial judge refused instructions that Herman was acting within the scope of his employment at the time of the accident and instead instructed the jury that whether he was acting within the scope of his employment depended upon a number of factors including among others, "whether his conduct was authorized by his employer, either expressly or impliedly; the nature of the employment, its object and the duties imposed thereby; whether the employee was acting in his discharge thereof; whether his conduct occurred during the performance of services for the benefit of the employer, either directly or indirectly, or of himself; whether his conduct, even though not expressly or impliedly authorized, was an incidental event connected with his assigned work; and many other things besides the time and place of performance of his duties as an employee."

After the jury returned its verdict in favor of Westinghouse nine to three, the trial judge inquired, as "a matter of information only," if the jury found negligence on the part of Herman. The foreman responded in the affirmative to that question and also the further question as to whether the jury's decision related to scope of employment.

█ Although earlier authorities sought to justify the *respondeat superior* doctrine on such theories as "control" by the master of the servant, the master's "privilege" in being permitted to employ another, the third party's innocence in comparison to the master's selection of the servant, or the master's "deep pocket" to pay for the loss, "the modern justification for vicarious liability is a rule of policy, a deliberate allocation of a risk. █ The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are

placed upon that enterprise itself, as a required cost of doing business. They are placed upon the employer because, having engaged in an enterprise which will, on the basis of past experience, involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large." (Prosser, Law of Torts (3d ed. 1964) p. 471; fns. omitted.) Dean Prosser's citations suggest that the "modern" justification has been accepted for more than 50 years.

Another leading authority also points out that the modern and proper basis of vicarious liability of the master is not his control or fault but the risks incident to his enterprise. "We are not here looking for the master's fault but rather for risks that may fairly be regarded as typical of or broadly incidental to the enterprise he has undertaken. . . . Further, we are not looking for that which can and should reasonably be avoided, but with the more or less inevitable toll of a lawful enterprise." (2 Harper and James, The Law of Torts (1956) pp. 1376-1377; see also *United States* v. *Romitti* (9th Cir. 1966) 363 F.2d 662, 666 (applying California law).)

Similarly, California cases have long recognized that the employer's responsibility for the torts of his employee extends beyond his actual or possible control of the servant to injuries which are "risks of the enterprise." (*Carr* v. *Wm. C. Crowell Co.,* 28 Cal.2d 652, 655-656 [171 P.2d 5]; *George* v. *Bekins Van & Storage Co.,* 33 Cal.2d 834, 843 [205 P.2d 1037]; *Fields* v. *Sanders,* 29 Cal.2d 834, 841 [180 P.2d 684, 172 A.L.R. 525].) Chief Justice Traynor has pointed out: "The principal justification for the application of the doctrine of *respondeat superior* in any case is the fact that the employer may spread the risk through insurance and carry the cost thereof as part of his costs of doing business." (*Johnston* v. *Long,* 30 Cal.2d 54, 64 [181 P.2d 645].) ▆ Thus, it must be deemed settled in California that in accordance with the principal justification for the doctrine, the employer's liability extends to the risks inherent in or created by the enterprise.

The cases which have considered recovery against the master for accidents occurring within the scope and during the period of employment have established a general rule of liability with a few exceptions for cases where the employee has substantially deviated from his duties for personal purposes. (See 1 Witkin, Summary of Cal. Law (7th ed. 1960) pp. 446-448.) ▆ In the instant case, the employee was on company time and was engaged in the very conduct contemplated by the employer.

Liability of the employer may not be avoided on the basis of the "going and coming" rule. Under the "going and coming" rule, an employee going to and from work is ordinarily considered outside the scope of employment so that the employer is not liable for his torts. (1 Witkin, Summary of Cal. Law (7th ed. 1960) pp. 448-449.) ■ The "going and coming" rule is sometimes ascribed to the theory that the employment relationship is "suspended" from the time the employee leaves until he returns (*Harvey* v. *D & L Constr. Co.,* 251 Cal.App.2d 48, 51 [59 Cal.Rptr. 255]), or that in commuting he is not rendering service to his employer (*Robinson* v. *George,* 16 Cal.2d 238, 244 [105 P.2d 914]). Nevertheless, there are exceptions to the rule.

Thus in *Harvey* v. *D & L Constr. Co., supra,* 251 Cal.App.2d 48, 51, the court reversed a nonsuit for the employer where it was shown that because of the remote site of the construction project, the employer had asked the employee to recruit other employees, one such employee was riding at the time of the accident, and the employer was furnishing the gas for the trip to the employee's home. Similarly, in *Richards* v. *Metropolitan Life Ins. Co.,* 19 Cal.2d 236 [120 P.2d 650], liability of the employer to an innocent third party was recognized from the time that an outside salesman left his home to see clients outside the office, and where his work involved both office work and field work; it was held immaterial whether he was proceeding to his office or to see some of his customers elsewhere. In *Boynton* v. *McKales,* 139 Cal.App.2d 777 [294 P.2d 733], the employer was held liable where the injury occurred while the employee was driving home from a company banquet.

Liability of an employer to an innocent third party for an accident occurring on the way to work was upheld in *Breland* v. *Traylor Engineering, etc. Co.,* 52 Cal.App.2d 415, 423-425 [126 P.2d 455], where the employer had sent the employee to California from Pennsylvania to help construct a kiln, traveling and subsistence allowances were paid by the employer while the employee was traveling to California, and the employer paid five cents a mile for use of the car from the employee's temporary home to the job site. The court reasoned that under this showing it could be inferred that the employer "impliedly agreed" that the employee should be deemed to be acting in the course and scope of his employment while going to and coming from work. (52 Cal.App.2d at p. 425.)

In *Kobe* v. *Industrial Acc. Com.,* 35 Cal.2d 33, 35 [215 P.2d 736], a case arising under the workmen's compensation law, the court reasoned that, although the employment relationship is ordinarily suspended when the employee is going or coming, "the employer may agree, either expressly or impliedly, that the relationship shall continue during the period

of 'going and coming,' in which case the employee is entitled to the protection of the act during that period. Such an agreement may be inferred from the fact that the employer furnishes transportation to and from work as an incident to the employment. [Citations.] It seems equally clear that such an agreement may also be inferred from the fact that the employer compensates the employee for the time consumed in traveling to and from work." (35 Cal.2d at p. 35.)[3]

The above cases indicate that exceptions will be made to the "going and coming" rule where the trip involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force. The cases also indicate that the fact that the employee receives personal benefits is not determinative when there is also a benefit to the employer. (See also *Meyer* v. *Blackman,* 59 Cal.2d 668, 676 [31 Cal.Rptr. 36, 381 P.2d 916]; *Trejo* v. *Maciel,* 239 Cal.App.2d 487, 496 [48 Cal.Rptr. 765].)

There is a substantial benefit to an employer in one area to be permitted to reach out to a labor market in another area or to enlarge the available labor market by providing travel expenses and payment for travel time. It cannot be denied that the employer's reaching out to the distant or larger labor market increases the risk of injury in transportation. In other words, the employer, having found it desirable in the interests of his enterprise to pay for travel time and for travel expenses and to go beyond the normal labor market or to have located his enterprise at a place remote from the labor market, should be required to pay for the risks inherent in his decision.

■ We are satisfied that, where, as here, the employer and employee have made the travel time part of the working day by their contract, the employer should be treated as such during the travel time, and it follows that so long as the employee is using the time for the designated purpose, to return home, the doctrine of *respondeat superior* is applicable. It is unnecessary to determine the appropriate rule to be applied if the employee had used the time for other purposes. We also need not decide now whether the mere payment of travel expenses without additional payment for the travel time of the employee as in *Harris* v. *Oro-Dam Constructors,* 269

---

[3]Although the test under the workmen's compensation law of "arising out of and in the course of the employment" (Lab. Code, § 3600), is not identical with the test of "scope of employment" under the *respondeat superior* doctrine (*Saala* v. *McFarland,* 63 Cal.2d 124, 128-129) [45 Cal.Rptr. 144, 403 P.2d 400], one of the principal considerations under compensation law is the benefit to the employer (*Garzoli* v. *Workmen's Comp. App. Bd., ante,* pp. 502, 505-506 [86 Cal.Rptr. 1, 467 P.2d 833]; *Smith* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 814, 819-820 [73 Cal.Rptr. 253, 447 P.2d 365]); both fields of law are concerned with the allocation of the cost of industrial injury; and the two tests are closely related (see 2 Harper and James, *supra,* pp. 1377-1378).

Cal.App.2d 911 [75 Cal.Rptr. 544], reflects a sufficient benefit to the employer so that he should bear responsibility to innocent third parties for the risks inherent in the travel. (Cf. *Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd.,* 66 Cal.2d 944, 948 [59 Cal.Rptr. 622, 428 P.2d 606].)

■ The facts relating to the applicability of the doctrine of *respondeat superior* are undisputed in the instant case, and we conclude that as a matter of law the doctrine is applicable and that the trial court erred in its instructions in leaving the issue as one of fact to the jury.

The city urges that we order the entry of judgment notwithstanding the verdict. Although the city's damages appear undisputed at $134,667.10 and the foreman of the jury upon questioning of the court said that it found negligence, no formal finding of negligence was returned by the jury.

The judgment is reversed. The order denying motions for judgment notwithstanding the verdict is affirmed. Appellants to recover costs on appeal.

Burke, Acting C. J., McComb, J., Tobriner, J., Sullivan, J., and Ford, J.,* concurred.

---

*Assigned by the Acting Chairman of the Judicial Council.