[Civ. No. 51027. Second Dist., Div. Three. Nov. 22, 1977.]

BRIAN DOUGLAS CHURCH, Plaintiff and Appellant, v.
JERRY JOSEPH ARKO et al., Defendants and Respondents.

*Assigned by the Chairperson of the Judicial Council.

292

**COUNSEL**

John J. Ambrose, Jr., for Plaintiff and Appellant.

Clausen, Harris & Campbell and Inlow H. Campbell for Defendants and Respondents.

**OPINION**

IBÁÑEZ, J.*—This is an appeal from an order of dismissal following the granting of a summary judgment.

The plaintiff-appellant, Church, while operating a motorcycle, was involved in an accident with a motor vehicle operated by defendant Arko. Appellant joined as a defendant Vornado, Inc., doing business as Builders Emporium (respondent), alleging in his complaint that on November 11, 1975, the date of the accident, Arko was employed by respondent and the accident arose in the course and scope of Arko's employment.

Respondent made a motion for a summary judgment on the ground that there were no triable issues of fact upon which to impute liability to respondent as Arko's employer.

RECITAL OF FACTS ON MOTION<br>FOR SUMMARY JUDGMENT

The recital which follows is based on the moving papers, and opposition thereto, considered by the trial court on the motion for summary judgment made by and granted to respondent.

---

*Assigned by the Chairperson of the Judicial Council.

Arko was employed by respondent as an inside salesman in its nursery, lumber and garden supplies department. He was paid on an hourly basis from a time card which he punched in and punched out upon arrival and departure from the store. During the lunch hour he punched in and punched out. Arko's work for respondent was performed entirely on the premises. He was not paid any compensation for transportation to and from work nor for any time incurred in going to and from work. His hours were subject to occasional variation, depending upon his attendance at college courses.

The automobile involved in the accident, being operated at the time by Arko, was his own. It was his means of transportation from and to work, school and residence. Its use, or nonuse, was his own choice to make. Arko was not required to have a car or to drive a car to work.

Arko was attending college while employed by respondent. His hours of work were arranged so as not to conflict with his classes at college; his hours of work depended also on the need for his services by respondent.

Arko said that he did not know whether there was public transportation from his home to his place of employment and he estimated that the distance between his home and respondent's place of business was from eight to ten miles.

### DISCUSSION

In deciding whether there was an abuse of discretion in granting the motion for summary judgment, we must ask and answer the question whether a triable issue of fact was presented by the moving papers. ■ The function of the trial court in passing on such a motion is not to determine an issue of fact but rather to determine whether an issue of fact does, in fact, exist; in doing so, the papers of the moving party are to be strictly construed while those of the opposition are to be liberally construed. (*Black* v. *Sullivan* (1975) 48 Cal.App.3d 557, 567 [122 Cal.Rptr. 119].)

Arko's declaration and excerpts from his deposition were included in the moving papers and the opposition papers thereto. Appellant asserts that the combination of two facts is supportive of his contention, namely: (1) *Arko's hours of work*: The assistant manager of respondent declared that Arko's hours were arranged to accommodate his schedule. Arko said in his deposition, "I usually work from 5:30 to 9 and at times they would

call me in, but usually I work at night because during the day I was going to school." He said that sometimes he would receive a call to come to work at a particular time, adding that, for example, if he were asked to come in an hour earlier, he would do so. (2) *Travelling distance*: Arko said that the distance from his home to respondent's place of employment was from eight to ten miles and that, as far as he knew, no public transportation was available.

## APPELLANT'S CONTENTIONS

The appellant rests his argument on the combination of facts last recited. From these facts, appellant alleges, two inferences can be drawn: (1) that the use of an automobile by Arko for transit to and from respondent's place of business was an implied requirement of Arko's employment; and (2) Arko's ability to get to work promptly at irregular hours was beneficial to respondent in a manner not common to the ordinary members of its work force. If, from the facts stated, it was reasonable to make such inferences, then there was a triable issue of fact and the trial court abused its discretion in granting the motion for summary judgment. This is the gist of appellant's argument.

Appellant cites *Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150 [104 Cal.Rptr. 456, 501 P.2d 1176], for the proposition that the use of an automobile in commuting to and from work can be an implied requirement of employment which thereby exposes the employer to liability for damages arising out of such use. This was a workmen's compensation case. The court held that the facts[1] before it met the test for liability under the workmen's compensation law of "arising out of and in the course of the employment." (Lab. Code, § 3600.)

The validity of appellant's contentions depends upon affirmative answers to two questions. The first is whether or not the facts before us in the instant case are an analogue to the facts in *Hinojosa* so that the same

---

[1] In *Hinojosa, supra,* the injured worker, the applicant for benefits, was employed with other workers by the operator of seven or eight noncontiguous ranches. Upon completion of the work at one ranch, the foreman followed the practice of directing and assigning the workers to different ranches. Each worker's pay started from the time that he arrived at the job and continued until he departed for home, including the time spent in transit between the various ranches. The trial judge in the compensation hearing found that the nature of the work made it necessary for an employee to have transportation during the work day. The applicant did not own a car but rode with a fellow worker to whom he paid a specified amount to share the operating costs of the automobile. At the time of the injury, the applicant was enroute home in the fellow worker's automobile.

inference can be made here as was made in that case, i.e., that the use of an automobile by the employee (here, Arko) was an implied requirement of the employment. The second is whether or not the rule in *Hinojosa* can properly be applied where, as here, vicarious liability under the doctrine of respondeat superior is sought to be imposed on the employer through his employee.

The "going and coming" rule is the criterion for determining the liability of an employer for injuries suffered by his employee while in transit to and from the job site. If the employee is injured while going to or coming from the job, his injuries, generally speaking, are not compensable because they do not "arise out of or in the course of the employment." (Lab. Code, § 3600.) This is a simple statement of the rule but its application is not simple and its exceptions[2] are many.

Early in the development of the rule, injuries occurring in the ambit of the "going and coming" transit were compensable only if the employee was performing some duty for his employer at the time the injuries were sustained.[3] The exceptions to the rule have so multiplied that now only transit-injuries occurring in local commutes enroute to a fixed place of business at fixed hours are necessarily noncompensable in the absence of special or extraordinary circumstances.[4]

---

[2] "[T]he courts have developed increasingly numerous exceptions to avoid its application where the injured employee would otherwise be unjustly deprived of compensation. Not only have we reached the point, they argue, where the exceptions have obliterated the rule, but continuing to focus on the artificially perpetuated 'rule' and its categories of exceptions causes the board and the courts to lose sight of the primary statutory test of 'in the course of employment.' " (*Hinojosa, supra,* at p. 156, fn. 5.)

[3] "... In granting compensation to a stenographer injured in an automobile accident in a company car on her way home from work, the court commented, 'Petitioner contends that the applicant was not acting within the course of her employment at the time of her injury because she was not performing any service growing out of or incidental to her employment. It is not indispensable to recovery, however, that the employee be rendering service to his employer at the time of the injury.' [Citation.]" (*Id.* at p. 155.)

[4] "... In substance the courts have held non-compensable the injury that occurs during a local commute enroute to a fixed place of business at fixed hours in the absence of special or extraordinary circumstances. The decisions have thereby excluded the ordinary, local commute that marks the daily transit of the mass of workers to and from their jobs; the employment, there, plays no special role in the requisites of portage except the normal need of the presence of the person for the performance of the work.

"[¶] ... [M]any situations do not involve local commutes enroute to fixed places of business at fixed hours. These are the extraordinary transits that vary from the norm because the employer requires a special, different transit, means of transit, or use of a car, for some particular reason of his own. When the employer gains that kind of a particular advantage, the job does more than call for routine transport to it; it plays a

"[T]he rule of liberal construction mandated by Labor Code, section 3202 has affected the development of exceptions to the 'going and coming' rule in the workmen's compensation field . . . ." (*Huntsinger* v. *Glass Containers Corp.* (1972) 22 Cal.App.3d 803, 808 [99 Cal.Rptr. 666].) But we are not mandated in the instant case, as under worker's compensation law, to interpret the law liberally in favor of the claimant. ▮ ▮▮▮▮ Other considerations are involved in deciding whether or not the liability of an employer for the torts committed by his employee should be broadened under the doctrine of respondeat superior.[5] (*Harris* v. *Oro-Dam Constructors* (1969) 269 Cal.App.2d 911, 915-918 [75 Cal.Rptr. 544].)

▮ There is a marked conceptual difference in the rationale imposing liability on the employer under workers' compensation laws[6] for

different role, bestowing a special benefit upon the employer by reason of the extraordinary circumstances. The employer's special request, his imposition of an unusual condition, removes the transit from the employee's choice or convenience and places it within the ambit of the employer's choice or convenience, restoring the employer-employee relationship." (*Hinojosa, supra,* at p. 157.)

[5] ". . . '"[T]he modern justification for vicarious liability [at least where liability is predicated upon negligence] is a rule of policy, a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. . . ."' (*Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d at pp. 959-960 [88 Cal.Rptr. 188, 471 P.2d 988] quoting Prosser, Law of Torts (3d ed. 1964) p. 471.) 'The principal justification for the application of the doctrine of *respondeat superior* . . . is the fact that the employer may spread the risk through insurance and carry the cost thereof as part of his costs of doing business.' (*Johnston* v. *Long,* 30 Cal.2d 54, 64 [181 P.2d 645]; also *Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d at p. 960.) '[T]he modern and proper basis of vicarious liability of the master is not his control or fault but the risks incident to his enterprise.' [Citation.]" (*Huntsinger* v. *Glass Containers Corp., supra,* at p. 808.)

[6] "From an economic standpoint the basic philosophy of workmen's compensation is generally as follows: (1) employers and employees in industry are engaged in a common venture for the furnishing of goods or services to society, anticipating profits or wages, as the case may be, as a reward; (2) their relationship is not solely one created by simple contract with each other, but amounts to a kind of industrial status; (3) the risk of injury and financial burden resulting therefrom should be borne by industry as a whole rather than fall solely upon the employee involved; and (4) the burden of the wearing out and destruction of human, as well as inanimate, machinery should be borne by industry just as other costs of production are assumed by the employer and ultimately passed on to the public. It is in effect a special tax and a part of the operating expense, just as truly as any other cost of repair or operation. The industry as a whole is subject to the same hazard, and no unequal burden is placed upon a particular employer's establishment. Furthermore, placing such a responsibility upon industry, through a system which provides financial reward to the individual employer for a lowered accident rate, tends by the spur of competition to reduce accidents, thus furthering the general social policy." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1977) § 1.05 [2].)

injuries suffered by his employee on the one hand and, on the other, the rationale imposing liability on the employer to the public in general for the negligent acts of his employee under the doctrine of respondeat superior. In the first instance, the employer under the workers' compensation laws is made liable for injuries sustained by his employee irrespective of fault. Under general tort principles, on the other hand, fault is still one of the fundamental bases for imposing liability. The primary object for an award of damages in a civil action and the fundamental principle or theory on which such an award is based is just compensation or indemnity for loss or injury sustained by a complainant. (23 Cal.Jur.3d, Damages, § 1, p. 11.) Other considerations are involved in an award under the workers' compensation laws.[7]

 In the light of these conceptual. differences, it has been held that the authorities interpreting the words "arising out of and occurring in the course of his employment" for the purpose of determining liability under the workers' compensation laws are not controlling when the test of liability is in the interpretation of the words "acting within the scope of his employment" under the doctrine of respondeat superior. (*Harris* v. *Oro-Dam Constructors, supra,* 269 Cal.App.2d 911, 914-915.)

"Although a healthy symbiosis is possible, precedents developed in one field should not be injected into another without recognition of the separate principles prevailing in each." (*Id.,* at p. 914.)

" 'Scope of employment' " defines a more-restricted area of employee conduct than the phrase " 'arising out of and in the course of employment.' " (*Saala* v. *McFarland* (1965) 63 Cal.2d 124, 128-129, fn. 3 [45 Cal.Rptr. 144, 403 P.2d 400]; see also *Laines* v. *Workmen's Comp.*

[7]"The purpose of workmen's compensation is to rehabilitate, not to indemnify, since the concept of damages necessarily has to be abandoned along with the principle of negligence." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1977) § 1.05 [3].) The benefits provided by any sound and workable system of compensation necessarily cannot be fully compensatory. The essential intent of the system is limited to assuring the injured worker and his dependants a reasonable subsistence while he is unable to find work, and to effectuating his speedy rehabilitation and reentry. into the labor market. A compensation scheme by which every injured employee is held harmless from all loss would not only impose a crushing burden of expense upon industry and the public, but would create extraordinary opportunities for fraud. *Compensation benefits are* accordingly designed to be *high enough. to provide for maintenance* and rehabilitation of injured workers, *but low enough not to invite fraud and malingering.* (2 Hanna, *supra,* § 1.05 [5] [a].)

*Appeals Bd.* (1975) 48 Cal.App.3d 872, 879-880 [122 Cal.Rptr. 139].) Thus, an employee can suffer a compensable injury under workers' compensation but not be within the scope of employment. (*Castro* v. *State of California* (1977) 70 Cal.App.3d 156, 159 [138 Cal.Rptr. 572].) If an injury is within the "scope of employment," it will probably be "arising out of and occurring in the course of employment"; however, the reverse is not true. While the tests for liability under workers' compensation and vicarious liability of the employer for torts of the employee are closely related, the courts recognize a difference. (*Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d 956, 962; *Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 619 [124 Cal.Rptr. 143].)

Thus, while workers' compensation cases can be helpful in determining vicarious liability of the employer for torts of the employee, such cases are not controlling. (*Castro* v. *State of California, supra,* 70 Cal.App.3d 156, 159.)

We conclude that the appellant cannot rely upon *Hinojosa* inasmuch as his theory of liability is based on the doctrine of respondeat superior. Absent from this theory of liability are many of the policy reasons which support the claim for compensation of an employee against his employer under the workers' compensation laws under the test of liability there applied, i.e., "arising out of and in the course of his employment."

But assuming, arguendo, that the appellant could rely on the rule in *Hinojosa,* appellant would still not prevail since the facts in that case are not analogous to the facts in the case before us. It follows, therefore, that the same inference that was made from the facts in *Hinojosa* cannot be made from the facts here, namely, that the use of a private automobile by the employee was an implied requirement of the employment.

In *Hinojosa,* the implied requirement that the employee use an automobile arose from the fact that the employee, in the course of his employment, was required to travel from one noncontiguous field to another in the course of the performance of his work as a farm laborer. Although the employer did not furnish the means of transportation, the employee was paid for the time spent in transit from one job site to another. The trier of fact in *Hinojosa* found that "the nature of the work made it necessary for an employee to have transportation during the work day as the employer shifted him from one ranch to another." (*Hinojosa* v. *Workmen's Comp. Appeals Bd., supra,* 8 Cal.3d 150, 152.)

In contrast to *Hinojosa*, there was no requirement, express or implied, that Arko use his automobile during his work shift. All work done by Arko for his employer was on the premises of the employer's store.

The appellant, in effect, argues that where an employee finds it convenient or even essential to use an automobile to travel to and from his place of employment, the "scope of his employment" begins and ends with the round trip to and from his place of employment. We are not prepared to accept such a broad principle of liability with the uncertainties and problems of practical application which it would no doubt create. Neither *Hinojosa* nor any other case that we have found supports such a principle.

The judgment is affirmed.

Potter, Acting P. J., and Allport, J., concurred.