[Civ. No. 23983. Fourth Dist., Div. Two. Jan. 20, 1981.]

GOLDEN WEST BROADCASTERS, INC., Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
DEAN BALL, Real Party in Interest.

948

**COUNSEL**

Wilson, Borror & Dunn and Richard L. Scott for Petitioner.

No appearance for Respondent.

Thomas T. Anderson and Edward Peck for Real Party in Interest.

OPINION

McDANIEL, J.—

INTRODUCTION

In these original proceedings, the petitioner, who is the defendant employer in an action brought to recover damages for injuries suffered by plaintiff in a fistfight with the defendant employee, challenges the propriety of the trial court's denial of petitioner's motion for summary judgment by seeking a writ of mandate to rectify the claimed error. In our view, the trial court should have granted petitioner's motion for summary judgment because the record demonstrates, as a matter of law on undisputed facts, that the defendant employee was not acting in the scope of his employment at the time of the fight with plaintiff. Accordingly, we shall issue the peremptory writ.

SYNOPSIS OF THE PLEADINGS

The issues addressed by the motion for summary judgment were of course framed by certain allegations and denials thereof contained in the pleadings. Plaintiff purported to plead two causes of action against petitioner. The first charged petitioner with negligently employing "a violent and unsuitable employee, Sanford Prudden" who violently assaulted plaintiff by striking him and kicking him. Such allegation was enhanced with the further allegation that petitioner knew Prudden's "inclination, propensity and habit of drinking to excess and after so doing [to] be predisposed to lose his temper." The first count further alleged that the attack upon plaintiff by Prudden was the direct result of petitioner's negligence in employing him. No damages were alleged however.

In the second count, after incorporating certain "housekeeping" allegations, i.e., paragraphs I-IV, the complaint goes on to allege that "On or about March 8, 1974, while within the scope of his employment for defendants, Golden West Broadcrasters [sic] Company Inc., and in furtherance of that employment, defendant, Sanford Anthony Prudden, did intentionally and maliciously attack plaintiff by beating him and kicking him about his body." Again, no damages were alleged.

The third and fourth counts were pleaded against Prudden and sought $1 million in compensatory damages and $2 million in exemplary damages.

From the foregoing it appears that plaintiff by his complaint sought to fix direct liability on petitioner based upon negligence in hiring a person with known propensities for violence, and, alternatively, to fix imputed liability on petitioner based upon respondeat superior.

In its answer petitioner denied each and every allegation contained in paragraphs I through XIV inclusive, being all the paragraphs of the complaint, doing so per section 431.30 of the Code of Civil Procedure. As affirmative defenses, petitioner alleged contributory negligence, assumption of the risk and that the complaint failed to state a cause of action for exemplary damages.

### SUMMARY OF THE DECLARATIONS

After the case was at issue, petitioner moved for summary judgment.[1] In support of its motion, petitioner filed the declarations of Hector Highton and Robert Kenny. In addition portions of the depositions of Sanford Prudden were also submitted.

As relevant to the issues framed by the pleadings, these supporting papers showed that Prudden on March 8, 1974, the date of the altercation, was in the employment of petitioner Golden West Broadcasters, Inc., as a stage manager. The declaration of Hector Highton particularly stated that he was Prudden's immediate superior and that he, Highton, had no knowledge of Prudden's having a propensity to drink heavily or to engage in fights. He described Prudden as an efficient hard-working man.

Kenny's declaration identified the declarant as custodian of petitioner's payroll records and attached as an exhibit Prudden's time card for March 8, 1974, indicating that he had worked from 7 a.m. to 3:30 p.m. on that day with a half-hour off for lunch. His position was stated as "Sr. Stage Supervisor." His duties that day were described as "Remote-Palm Springs."

From the excerpt of Prudden's deposition filed in support of the motion it appears that after work Prudden had gone to a bar and had never met the plaintiff before that time. Prudden deposed that plaintiff took exception to what he, Prudden, had said to his wife. This led to

---

[1]Petitioner also moved for an order establishing matters without substantial controversy, the denial of which we need not deal with because of the disposition of the case otherwise.

plaintiff's inviting Prudden to go outside. Both men, according to the deposition testimony, then proceeded to the parking lot outside the bar where a fight ensued.

In opposition to the motion, the plaintiff submitted excerpts from three depositions. From the portion of the Prudden deposition offered by plaintiff it appeared that Prudden was out in the desert "on assignment" to set up for the telecast of a baseball game. Prudden had come down that day to set up for the game to be played the next day, and the implication was that he would reverse the process after the game and return to his regular base of employment.

According to his deposition testimony, Prudden had been in the bar for several hours before the fracas with plaintiff occurred. It further appeared that Prudden was on per diem paid by petitioner which he was at liberty to spend as he chose. In other words, he did not charge any drinks he purchased in the bar to an expense account.

After the fight in the parking lot, Prudden left the area of the bar and hotel by means of a company car which had been provided to him by petitioner while he was in Palm Springs on assignment.

On cross-examination by plaintiff's counsel, at the deposition, Prudden stated that he was not in the bar at the request of petitioner and had made his own choice to go there. He testified further that his job was an hourly one, and that he received overtime pay if he worked more than 40 hours a week.

In the excerpt of the deposition of Barbara Matson it appeared that at one time she had been married to Prudden and was the lady in the bar the treatment of whom plaintiff had taken exception to. Her deposition otherwise only confirmed that Prudden was in Palm Springs that weekend to set up and take down for the telecast of a California Angels' baseball game scheduled for Sunday, March 9. After the fight Ms. Matson and Prudden drove away in a station wagon belonging to petitioner, and her deposition testimony further indicated that it was among several kept in Palm Springs for use by petitioner's employees. In other words, Prudden had not driven out to Palm Springs from Los Angeles in a company car.

The excerpt of the deposition by Wayne Schicke provided only the observations of a person who had seen plaintiff just after the fight and

who had seen Prudden drive away in a stationwagon with a KTLA inscription painted on its side.

That is the sum and substance of the respective declarations. They present a minimal picture of the circumstances surrounding the event. In this connection, we note that both sides at the time of the motion to the trial court indulged in the questionable practice of including in their written points and authorities extensively detailed recitations of the "facts," many of which are nowhere to be found in any of the declarations. This was particularly true of the plaintiff's filing.

To summarize then, petitioner, in support of its motion for summary judgment, along with what was in Prudden's deposition as offered by plaintiff, submitted under oath the following. Prudden was employed by petitioner as a senior stage supervisor. As here relevant he had been sent down to Palm Springs from Los Angeles to set up the staging, i.e., cameras and supporting equipment, for the telecast of a professional baseball game the next day. After the game was over, he would reverse the set up process and return to Los Angeles.

On the day before the game he worked from 7 a.m. until 3:30 p.m. He was paid a per diem while on "remote" duty, an amount of money not appearing in the record. At any rate, he was at liberty to spend it how he chose. That evening he chose to go to the bar at the Gene Autry Hotel. After being there with his wife for several hours, he was confronted by the plaintiff who, for reasons likewise not appearing in the record, had become offended by Prudden's behavior and then invited him outside. The two men proceeded to the parking lot and a fistfight ensued. According to Prudden, he defended himself.

Otherwise, the supporting papers declare that petitioner had no knowledge of Prudden's propensity to drink and become violent.

What did the plaintiff's materials add to the picture not shown by the supporting items? They show that Prudden, after the fight, left the parking lot in a stationwagon driven by his wife and owned by petitioner. Otherwise they add very little.

Again we note that the factual recitations contained in the respective points and authorities submitted to the trial court are far more elaborate and detailed than those presented under oath. Interestingly enough, however, there is no dispute between the parties over the extrinsic, ob-

servable, operational facts reported gratuitously by counsel in this way. Therefore, to better demonstrate an element of plaintiff's showing, the following is a quotation of a portion of the unsupported representations made on behalf of plaintiff to the trial court. "Mr. Ball had noticed that for a certain length of time, Mr. Prudden had been hassling some of the women customers at the bar. As a result, he attempted to quiet Mr. Prudden down and asked him to step outside and talk about the matter in hopes of further calming him down. As they left the barroom, Mr. Prudden, without any provocation, began to severely strike the plaintiff with his fists and by continually kicking the plaintiff once he had fallen to the ground."

### ISSUES AND DISCUSSION

All we are called upon to review here is the propriety of the trial court's decision in overruling petitioner's motion for summary judgment. In approaching such a decision the trial court is guided by well settled and clearly defined rules. ■ "Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue." (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785], confirmed in *Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 596 [125 Cal.Rptr. 557, 542 P.2d 981].)

All right, what do we find presented by petitioner in terms of the pivotal issues in the case? ■ As to the first theory of relief, i.e., a negligent hiring of a person with known propensities for drinking and violence, it is flatly declared in the declaration of Hector Highton, Prudden's immediate superior that he, Highton, had no knowledge of any such propensities. The reasonable inference attaching here is that if Highton did not know of these things, then no one connected with petitioner did. Because no refutation to this fact was offered by plaintiff, there was no triable issue of fact presented with reference to the count based upon negligent hiring. Moreover, because the facts asserted on behalf of petitioner, if taken as true, would provide the basis for a judgment in petitioner's favor on the first count, the motion should have been granted as to that count. In any event, at oral argument plaintiff abandoned any opposition to the petition as to the first count.

As to the second theory of relief, i.e., that petitioner is liable by imputation under the doctrine of respondeat superior because Prudden at the time of the altercation was acting in the scope of his employment, the materials offered in support of the motion are simple and straightforward. The question to be resolved under the first evaluation required by *Stationers* is whether the facts presented would be sufficient to support a judgment in favor of the moving party. What is called for at this point is a legal determination of whether the facts so demonstrated, as a matter of law, show that Prudden was *not* acting in the scope of his employment.

Plaintiff, in his points and authorities presented to the trial court in opposition to the motion, while exercising considerable liberties with what facts had actually been recited in the declarations and deposition excerpts, took the position that eight factors demonstrated that there was sufficient evidence to establish a triable issue of fact. For purposes of our analysis, we shall accept them as properly presented to the trial court. They are: "(1) Sanford Prudden was on assignment in the Palm Springs area, on behalf of Golden West Broadcasters, to perform his duties as a stage manager at the filming of a California Angels pre-season baseball game, (2) He was not a resident of the Palm Springs area and therefore had to secure living arrangements in that area, (3) His living quarters, a hotel room at the Desert Inn, were paid for by his employer, Golden West Broadcasters for the time while he was on assignment in the Palm Springs area to perform his duties as a stage manager, (4) While on assignment, he received a per diem amount of cash, supplied by his employer, Golden West Broadcasters, to defray his travel expenses and meals, (5) This per diem amount could be used for whatever Mr. Prudden desired and may have possibly been used to purchase drinks at the Gene Autry Hotel Barroom, the night of the assault and battery, (6) It was customary, while on assignment, for employees of Golden West Broadcasters to meet at the Gene Autry Hotel room and while at the barroom, to discuss certain aspects of their business and employment, (7) While on assignment in the Palm Springs area, Mr. Prudden was supplied with a company car, by Golden West Broadcasters, which he used to transport himself and others to the Gene Autry Hotel barroom on the night of the incident in question, and (8) On the night of the incident on question, as related by Mr. Prudden in his deposition, Golden West was having a dinner or some other type of function for Golden West employees at the Gene Autry Hotel."[2]

---

[2] Prudden did not attend the dinner.

Parenthetically, we note, that in many of the cases where there is an effort to impute responsibility for an employee's tortious conduct to the employer because that conduct occurred in the scope of such employment, it is stated that whether the tort was committed within the scope of employment is a question of fact. Upon close analysis the cases so holding almost uniformly involve factual situations where conflicting inferences can be drawn from the same extrinsic facts.

However, where no such inferences are possible and where there is no dispute over the operable, overt, observable facts, then the question logically becomes one of law. After all, scope of employment as a basis to invoke the doctrine of respondeat superior is a legal concept in the final analysis as recognized by our Supreme Court in *Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956 [88 Cal.Rptr. 188, 471 P.2d 988]. That case involved the application of the "going and coming" rule, a specific refinement of the scope of employment rationale, where the plaintiff had been struck by an automobile driven by defendant's employee. There the court said, "The facts relating to the applicability of the doctrine of *respondeat superior* are undisputed in the instant case, and we conclude that as a matter of law the doctrine is applicable and that the trial court erred in its instructions in leaving the issue as one of fact to the jury." (*Id.*, at p. 963.)

In *Hinman*, the court ruled as a matter of law that the employee *was* acting in the scope of his employment; however, the applicability of the proposition remains a question of law regardless of whether the ultimate choice is for or against the plaintiff on determination of the scope of employment issue. If the facts are undisputed and no conflicting inferences are possible, the question is one of law. (See *Sherar* v. *B & E Convalescent Center* (1975) 49 Cal.App.3d 227, 229 [122 Cal.Rptr. 505].)

So it is here, and we shall marshal the authorities accordingly. Generally, liability of an employer under the doctrine of respondeat superior extends to torts of an employee committed within the scope of his employment. (*Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 617-618 [124 Cal.Rptr. 143].) As noted by Justice Tamura in *Rodgers*, "California has adopted the rationale that the employer's liability should extend beyond his actual or possible control over the employees to include risks *inherent in or created by the enterprise* because he, rather than the innocent injured party, is best able to

spread the risk through prices, rates or liability insurance." (*Id.* at p. 618; italics added.)

Many of the cases arising in this area involve, as here, assaults on the plaintiff by an employee of the defendant. ■ In such instances the imputation of liability follows where the employment in some way involves the risk of force being used against the plaintiff, i.e., where the act is connected with the employment. Such a situation is particularly demonstrated in *Stansell* v. *Safeway Stores, Inc.* (1941) 44 Cal.App.2d 822 [113 P.2d 264], where the altercation occurred when the manager of the defendant's store quarreled with a customer over an order, and, being called an opprobrious name, ran after the plaintiff customer and struck her. In the course of the *Stansell* opinion, the court recited the proposition just noted.

*Rodgers* provides a guide for application of this concept. It states, "One way to determine whether a risk is inherent in, or created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity. However, 'foreseeability' in this context must be distinguished from 'foreseeability' as a test for negligence. In the latter sense 'foreseeable' means a level of probability which would lead a prudent person to take effective precautions whereas 'foreseeability' as a test for *respondeat superior* merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by the employer. [Citation.]" (*Rodgers* v. *Kemper Constr. Co., supra*, 50 Cal. App.3d 608, 618-619.)

Pursuing the analysis of these cases finally brings one to the point where it has been held that if a tort is committed for the employee's own purposes, or as the result of a personal quarrel, the employer need not be liable even though at the time the employee is yet engaged in his employer's service. In the case before us we have reached that point. ■ Conceding as fact all of the eight items urged by plaintiff as demonstrating that Prudden was acting in the scope of his employment when he beat up the plaintiff in the parking lot at the Gene Autry Hotel, we hold as a matter of law that the beating was not inflicted in the scope of Prudden's employment.

In reaching this decision, we are aided by *Monty* v. *Orlandi* (1959) 169 Cal.App.2d 620 [337 P.2d 861]. In that case a bartender while on duty undertook to throw his own wife out of the bar. The plaintiff attempted to intercede and was punched out by the bartender. In the litigation which followed, the bartender employer was absolved at the trial and the judgment was affirmed on appeal.

While it is true that the issue in *Monty* was decided by a jury, that case is of the type where conflicting inferences could be drawn from the observable conduct, i.e., was the bartender attempting to maintain order or was he engaged in a wholly personal quarrel? In affirming the judgment, what the appellate court in effect ruled, as a matter of law, was that it could not be said on those facts that the bartender was acting within the scope of his employment.

In the case before us, no conflicting inferences are present. More importantly, applying the *Rodgers* test, it is specious in our view to argue that the employment of a television technician whose duties are to set up for and to stage telecasts of events remote from the television station creates an inherent risk of the type here involved. Such employment at no time contemplates contacts with the public. In other words, there is no inherent risk incidental to this kind of employment importing foreseeability of the type described in *Rodgers*. To invoke the doctrine of respondeat superior here would be to sanction a rule which would impose the liability of an insurer on all employers for every willful tortious act of their employees committed while off duty. Merely to state such a proposition is enough to discredit it, and we do.

■ One other observation is required by the facts of this case. We note that there is a marked conceptual difference in the rationale imposing liability on an employer under workers' compensation laws for injuries suffered by his employee on the one hand and, on the other, the rationale imposing liability on the employer in favor of the public in general for the tortious acts of his employee under the doctrine of respondeat superior. (*Church* v. *Arko* (1977) 75 Cal.App.3d 291, 298-299 [142 Cal.Rptr. 92].) Thus, as stated in *Church*, "In the light of these conceptual differences, it has been held that the authorities interpreting the words 'arising out of and occurring in the course of his employment' for the purpose of determining liability under the workers' compensation laws are not controlling when the test of liability is in the interpretation of the words 'acting within the scope of his employment' under the doctrine of respondeat superior. (*Harris* v. *Oro-Dam Con-*

*structors, supra,* 269 Cal.App.2d 911, 914-915 [75 Cal.Rptr. 544].)"
(*Id.* at p. 299.)

██ Returning to the procedural aspects of the analysis, we are satisfied that petitioner's showing at the motion for summary judgment, coupled with what was in Prudden's deposition as provided by plaintiff, was sufficient as a matter of law to entitle petitioner to prevail as to the second count. The question next is whether the plaintiff presented anything in refutation. We have already quoted his position, and even accepting the gratuitous representations as fact, nothing appears therein which would raise a triable issue of fact. The motion for summary judgment should therefore have been granted as to that count also.

### DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue, the same directing the respondent court to vacate its order of July 31, 1980, denying petitioner's motion for summary judgment, and directing it further to enter a new and different order granting petitioner's motion for summary judgment.

Kaufman, Acting P. J., and Morris, J., concurred.