[Civ. No. 63837. Second Dist., Div. Five. Oct. 19, 1982.]

LEE MUNYON et al., Plaintiffs and Appellants, v.
OLE'S, INC., Defendant and Respondent.

COUNSEL

Brenner & Rostand and Leonard Sacks for Plaintiffs and Appellants.

Stearns & Nelson and Lawrence J. Weisberg for Defendant and Respondent.

OPINION

**FEINERMAN, P. J.**—In this action for personal injuries, plaintiffs appeal from an order of dismissal following the granting of a motion for summary judgment in favor of defendant Ole's, Inc.

Plaintiff Lee Munyon was severely injured when she was struck by a vehicle operated by defendant Patricia Ann Edwards on November 30, 1979. Plaintiff and her parents, who are coplaintiffs, joined Ole's, Inc. as a defendant and alleged in their complaint that the accident occurred when Edwards was acting within the scope of her employment by Ole's. Defendant Ole's moved for summary judgment on the ground that there were no triable issues of fact upon which to impute liability to Ole's as Edwards' employer. Our recital of facts, which follows, is based on the moving papers and the opposition thereto considered by the trial court in ruling on the motion.

Patricia Ann Edwards was employed as a cashier by Ole's, Inc. Her duties were limited to ringing up sales on a cash register and the occasional marking and pricing of inventory. She never made any deliveries of merchandise and stated that she never used her car in connection with her duties as an Ole's employee. On Friday, November 30, 1979, Edwards decided to drive to Ole's to pick up her paycheck for the work week commencing November 19, 1979, and ending on November 25, 1979. Ole's payday was always the Friday following the work week which ended the previous Sunday. Employees who were not assigned to work on a Friday could come in to pick up their paycheck on a Friday or they could wait until the next time they were on the premises to pick up their paychecks. Edwards was not assigned to report to work on Friday, November 30, 1979, and testified at her deposition that she decided to drive to the store to pick up her paycheck for her "own convenience." After picking up her paycheck, Edwards walked to a nearby bank. She found the bank was very busy and decided to forgo her banking transaction and go home. She returned to her automobile and had proceeded one block from the Ole's store when she struck plaintiff Lee Munyon.

▪ "Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. ▪ The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. ▪ In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. ▪ Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts. [Citation.]" (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785];

*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 596 [125 Cal.Rptr. 557, 542 P.2d 981]; *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr.785, 484 P.2d 953].)

In their effort to establish defendant Ole's respondeat superior liability, plaintiffs rely on a number of workers' compensation cases holding that the act of any employee in collecting his pay, or any act incident to the collection of pay, is an act "arising out of and occurring in the course of employment." Plaintiffs also contend that the evidence establishes that Ole's is liable under the "special mission" or "special errand" exception to the "going and coming" rule. Finally, the plaintiffs argue that the "going and coming" rule should be narrowly construed by this court in a case such as this where it is alleged that the risk that materialized was "inherent in or created by the enterprise." We proceed to examine the plaintiffs' arguments.

### I.

■ Under the doctrine of respondeat superior, an employer is liable for the torts of his employees committed within the scope of their employment. (Civ. Code, § 2338.) The burden of proof is on the plaintiff to demonstrate that the negligent act was committed within the scope of employment. (*Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 721 [159 Cal.Rptr. 835, 602 P.2d 755].) As a general rule, whether an act is within the scope of employment is a question of fact. However, where the facts are undisputed and no conflicting inferences are possible, the question is one of law. (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 963 [88 Cal.Rptr. 188, 471 P.2d 988]; *Golden West Broadcasters, Inc.* v. *Superior Court* (1981) 114 Cal.App.3d 947, 956 [171 Cal.Rptr. 95].) ■ Here, there is no dispute over the operative facts and we deem the applicability of the doctrine of respondeat superior to be a matter of law.

Plaintiffs cite a number of workers' compensation cases which hold that activities incident to collecting wages arise out of and occur in the course of employment. (*Truck Ins. Exchange* v. *Ind. Acc. Com.* (1946) 27 Cal.2d 813, 818-819 [167 P.2d 705]; *Pacific Indem. Co.* v. *Ind. Acc. Com.* (1945) 26 Cal.2d 509, 514 [159 P.2d 625]; *State Comp. Ins. Fund* v. *Indus. Acc. Com.* (1924) 194 Cal. 28, 34 [227 P.168].) These cases are bottomed in the proposition that the duty to pay and the right to receive compensation is an integral part of the contract of employment and risks inherent in activities contemplated by the employment are within the safety net of the workers' compensation laws. Plaintiffs then assert Edwards was going "in the usual manner to a place designated by the employer" to collect the wages due to her for work previously performed and conclude

she was acting within the *scope of her employment* under the doctrine of respondeat superior.

If we assume, for purposes of further analysis, that Edwards was engaged in an activity "arising out of and occurring in the course of her employment," it does not resolve the problem before us. Workers' compensation cases can be helpful in determining vicarious liability of the employer for torts of the employee, but they are not controlling. (*Castro* v. *State of California* (1977) 70 Cal.App.3d 156, 159 [138 P.2d 572].) "[T]he differences between the common law and workmen's compensation usage of the term 'employment' stem from the fundamentally different purposes served by the employment concept in each context. Thus, whereas at common law the 'master-servant' concept was utilized primarily to delimit the scope of the master's vicarious tort liability and was thus concerned with injuries caused *by* the employee, the basic inquiry in compensation law involves which injuries *to* the employee should be insured against by the employer. [Citations.] Although there is considerable overlap between the two fields, in each context the determination of the presence or absence of a sufficient 'employment' relationship must ultimately depend on the purpose for which the inquiry is made." (*Laeng* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771, 777-778, fn. 7 [100 Cal.Rptr. 377, 494 P.2d 1].) As the court noted in *Castro* v. *State of California, supra,* 70 Cal.App.3d 156 at page 159, "The Workers' Compensation Act is a protective statute [citations] whose provisions must be liberally construed in favor of protecting injured workers. (Lab. Code, § 3202.) It is a shield for the injured worker. The imposition of vicarious tort liability, on the other hand, is a sword. Vicarious liability is a method of extending tort liability beyond those directly and immediately negligent."

This ideational difference is highlighted by the fact that an injured worker need not prove fault as a condition precedent to the recovery of benefits. Contrast this with the obligation of a plaintiff in an automobile accident case who has the burden of proving fault by a preponderance of the evidence before liability can be imposed on a defendant. There are sound economic and sociological reasons for these distinctions. The goal of workers' compensation laws is to rehabilitate the injured worker, not to indemnify. (See 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1977) § 1.05 [3].) In a tort action, the objective of a damage award is indemnification—compensating the injured party for the loss and harm suffered by him and proximately caused by the accident.

■ Thus, we conclude that the cases cited by the plaintiffs interpreting the words "arising out of and occurring in the course of employment" for the purpose of determining liability under the workers' compensation laws, although helpful for some reference purposes, are not determinative in the interpretation of the words "acting within the scope of employment" under the doctrine of respondeat superior. (*Church* v. *Arko* (1977) 75. Cal.App.3d 291, 298-300 [142 Cal.Rptr. 92].) "[S]cope of employment defines a more restricted area of employee conduct than the customary phrase 'arising out of and in the course of employment.' . . . " (*Saala* v. *McFarland* (1965) 63 Cal.2d 124, 128-129, fn. 3 [45 Cal.Rptr. 144, 403 P.2d 400].) An employee can suffer an injury that is compensable under workers' compensation laws and at the same time not be within the scope of employment under the doctrine of respondeat superior. (*Castro* v. *State of California, supra,* 70 Cal.App.3d 156, 159.)

## II.

■ Under the "going and coming" rule, an employee is not regarded as acting within the scope of his employment while going to or coming from his place of work. (*Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d 956, 961.)[1] However, the courts have recognized a number of exceptions to the "going and coming" rule. One of these exceptions is a negligent act committed while the employee was engaged in a "special errand" or "special mission" for the employer. (*Ducey* v. *Argo Sales Co., supra,* 25 Cal.3d 707, 722; *Trejo* v. *Maciel* (1966) 239 Cal.App.2d 487, 495 [48 Cal.Rptr. 765]; *Sullivan* v. *Thompson* (1939) 30 Cal.App.2d 675, 677-678 [87 P.2d 62].) When the employee is engaged in a "special errand," either as part of his regular duties or at the specific order or request of his employer, the employee is considered to be in the scope of his employment from the time he commences the errand until he returns, or until he deviates from his special errand for personal reasons. (*Boynton* v. *McKales* (1956) 139 Cal.App.2d 777, 789 [294 P.2d 733].) Examples of actions considered "special errands" include getting or returning tools (*Tarasco* v. *Moyers* (1947) 81 Cal.App.2d 804, 810 [185 P.2d 86]), attending a social function where the employee's attendance is expected and it benefits the employer (*Boynton* v. *McKales, supra,* 139 Cal.App.2d 777, 790-791), and returning to the employee's home from a service call for the employer's business when the employee is on call at his own home for his employer's business. (*Robinson* v. *George* (1940) 16 Cal.2d 238, 245 [105 P.2d 914].)

---

[1]The "going and coming" rule is based on the concept that the employment relationship is suspended from the time the employee leaves work until he returns, since, while travelling, the employee is not ordinarily rendering services to the employer. (*Gipson* v. *Davis Realty Co.* (1963) 215 Cal.App.2d 190, 209-210 [30 Cal.Rptr. 253].)

Plaintiffs contend that the "special errand" exception not only applies to activities requested by the employer, but also applies to special activities reasonably undertaken at the *invitation* of the employer. They rely upon the following language in *Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860 at page 868 [101 Cal.Rptr. 105, 495 P.2d 433]: ". . . [W]hen the employee engages in a special activity which is within the course of his employment, and which is reasonably undertaken at the request or invitation of the employer, an injury suffered while traveling to and from the place of such activity is also within the course of employment and is compensable." In coming to this conclusion, the court, in *Dimmig* at page 867, underscored the fact that Labor Code section 3202 requires the law be "'liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment.'" The petitioners, in *Dimmig* were the widow and children of an employee who was killed while returning home from a night college class. The court concluded that the employee's class attendance was directly related to his job functions and that the employer invited him to attend the class by reimbursing him for his tuition and encouraging him to attend the class to increase his effectiveness on the job.

We do not believe the *Dimmig* decision has any applicability to the case before us. First, we are dealing with a situation wherein a third party is attempting to impose vicarious responsibility on an employer for the torts of an employee. We do not have a situation where we are mandated to interpret a statute liberally for the "protection of persons injured in the course of their employment." Second, plaintiffs strain the facts to the breaking point in an attempt to fashion an "invitation" in the instant case. Edwards was not required or compelled to pick up her paycheck on Friday. Availability of the check on Friday does not convert that circumstance to an invitation to engage in a special errand for the benefit of the employer. At best, it was an option available at the election of the employee solely for the benefit of the employee.

We also note that Edwards was using her own automobile at the time of the accident, was never required to use an automobile during her work shifts, and that all work done by her was on the premises of the employer's store. We believe the facts in this case are comparable to the facts in *Church* v. *Arko, supra,* 75 Cal.App.3d 291 wherein it was held that the trial court properly granted the employer's motion for a summary judgment on the ground that there were no triable issues of fact as to whether the employee was acting within the scope of his employment at the time of the accident.

## III.

Plaintiffs further contend that Edwards' trip to pick up her paycheck on Friday was a "special journey" ·that negates application of the "coming and going" rule because the ·risk that materialized was a risk created by the employer's enterprise and was foreseeable.

In *Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608 at pages 618-619 [124 Cal.Rptr. 143], the court stated: "California has adopted the rationale that the employer's liability should extend beyond his actual or possible control over the employees to include risks inherent in or created by the enterprise because he, rather than the innocent injured party, is best able to spread the risk through prices, rates or liability insurance . . . .

"One way to determine whether a risk is inherent in, or created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity. However, 'foreseeability' in this context must be distinguished from 'foreseeability' as a test for negligence. In the latter sense 'foreseeable' means a level of probability which would lead a prudent person to take effective precautions whereas 'foreseeability' as a test for *respondeat superior* merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business."

In *Rodgers* v. *Kemper Constr. Co., supra,* 50 Cal.App.3d 608, the plaintiff was injured by defendant's employees after their work shift had ended and after they had been drinking. The court held that the continued presence of the employees was a convenience to the employer, as it was then able to recruit additional help for later shifts by informally contacting employees remaining on the job site. The court also held that there was substantial evidence that the after-hours beer drinking and socializing at the job site occurred with the express or implied permission of the employer and was a customary incident of the employment relationship.

In *Harris* v. *Trojan Fireworks Co.* (1981) 120 Cal.App.3d 157 [174 Cal.Rptr. 452] the plaintiffs were injured by an intoxicated employee of the defendant driving home from a Christmas party held by the employer on the employer's premises. The accident occurred after work and away from the employer's premises. The trial court sustained a demurrer to the complaint and entered a dismissal order. The appellate court reversed, holding that the complaint pleaded sufficient facts which, if proven, would support a jury determination that the employee's actions were within the

scope of his employment. The court cited the *Rodgers* case (*Rodgers* v. *Kemper Constr. Co.*, *supra*, 50 Cal.App.3d 608) and stated at page 163: "The underlying philosophy which holds an employer liable for an employee's negligent acts is the deeply rooted sentiment that a business enterprise should not be able to disclaim responsibility for accidents which may fairly be said to be the result of its activity. [Citations.] [¶] Thus, we think it can be fairly said that liability attaches where a nexus exists between the employment or the activity which results in an injury that is foreseeable. [Fn. omitted.] Foreseeable is here used in the sense that the employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among the other costs of the employer's business. [Citation.]"

Plaintiffs cite both the *Harris* and *Rodgers* cases and assert that Ole's created the risk in the instant case by impelling a special trip by Edwards to collect her pay. We disagree. On the record before us, there is no inherent risk incidental to Edwards' employment importing foreseeability as that term was defined as a test for respondeat superior in *Rodgers*. (*Rodgers* v. *Kemper Constr. Co.*, *supra*, 50 Cal.App.3d 608, 618-619.) Edwards was a cashier who never used a car in performing her daily tasks and was not required to use an automobile by her employer for any purpose. There is no evidence in the record that the employer had any knowledge of Edwards' use of an automobile to go to the employment site on Edwards' day off to pick up her paycheck. There is nothing unusual in having a fixed pay day following a work week and having a short time lag between the last day worked and payday. Plaintiffs' argument that the employer "created" the risk by holding on to the employees' money is too attenuated and does not comport with the realities of commercial and industrial relationships. Unless an employee is discharged, there is no legal requirement that an employee be paid each day for the work done that day. (See Lab. Code, §§ 204, 204b.)

If Edwards had been working on Friday, November, 30, 1979, and had picked up her paycheck during the day, there is no question that the "going and coming" rule would bar any claim against Ole's for torts committed by Edwards while driving her automobile home from work. The fact that Edwards voluntarily chose to come in on her day off to pick up her paycheck should not produce a different result. ■ To invoke the doctrine of respondeat superior here would be to sanction a rule which would impose the liability of an insurer on the employer for activities that clearly are not "typical of or broadly incidental" to the enterprise undertaken by the employer. (*Golden West Broadcasters, Inc.*

v. *Superior Court, supra,* 114 Cal.App.3d 947, 957; *Rodgers* v. *Kemper Constr. Co., supra,* 50 Cal.App.3d 608, 618-619.)

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 15, 1982.