[Civ. No. 29693. Fourth Dist., Div. Two. May 14, 1984.]

ELEANOR A. HARRIS et al., Plaintiffs and Appellants, v.
TROJAN FIREWORKS COMPANY, Defendant and Respondent.

## Counsel

Peach, Shapiro & Peach, William D. Shapiro and Timothy W. Peach for Plaintiffs and Appellants.

Morris, Polich & Purdy, Theodore P. Polich, Jr., Robert S. Wolfe and Gerald P. Schneeweis for Defendant and Respondent.

## Opinion

**RICKLES, J.**—Plaintiffs appeal a nonsuit which terminated their complaint against Trojan Fireworks Company (Trojan) for personal injuries and wrongful death arising out of an automobile accident.

Plaintiffs seek to hold Trojan liable, utilizing the theory of respondeat superior. Plaintiffs allege in their complaint the accident occurred while truck driver codefendant Anthony Barajas (Barajas) was acting within the scope of his employment with Trojan. The trial court found the uncontradicted evidence was insufficient to sustain a verdict in favor of plaintiffs and granted a nonsuit.

### Facts

Trojan manufactures and assembles fireworks in plant facilities consisting of several structures. The plant is fenced on all sides and entry from the access road is controlled by a locked gate.

Barajas worked inside the plant in the glue room, putting glue on the bottom of firework mounting cones. His job did not involve any outside

traveling and it did not require the use of a vehicle. Barajas owned a pickup truck which he drove for personal use. Trojan did not furnish Barajas transportation or reimburse him for any transportation expenses.

Trojan maintained a strict written company policy against the use or consumption of any alcoholic beverages inside the plant. Barajas was aware of the company's prohibition against alcohol and agreed to abide by it.

Each year Trojan closed the plant for the Christmas holidays. The plant ceased operations at noon on the last working day before the Christmas holidays. The plant's normal closing time was 4:30 p.m. The employees were free to leave at noon but were paid for a full day.

Each year after the plant closed at noontime, a number of the employees would hold an informal pot luck luncheon in the office area. The employees were informed of the luncheon by word of mouth. There were no formal or written notices posted. The employees initiated, coordinated, paid for and prepared the food and punch for the potluck luncheon. They were not reimbursed by Trojan.

All employees understood attendance at the luncheon was voluntary. The employees were paid for a full day whether they attended the luncheon or not. They were not paid additional compensation if they stayed nor were they encouraged to stay at the plant. None of the employees worked after 12 noon. Thirty percent of the employees left the plant by noon. The remaining employees, including Barajas, attended the luncheon which commenced in the office area at noon. There was no fixed time for the conclusion of the luncheon.

Because of Trojan's policy against the use and consumption of alcohol inside the plant, no beer, liquor or other alcoholic beverages were served, furnished or consumed at the luncheon or anywhere within the fenced-in plant premises.

Some of the employees exchanged gifts at the luncheon. The employees selected and purchased these gifts on their own. Some of these gifts consisted of bottled liquor. The gifts were distributed and unwrapped at the luncheon. None of the bottled liquor was opened or consumed inside the plant.

Approximately 1 o'clock, three employees went to a nearby store in their own vehicle and bought some beer. This beer was purchased with the employees' money. The employees returned to the plant, parked in the Trojan parking lot outside the fenced-in area, and proceeded to consume the beer

with several other employees, including Barajas. The plant foreman joined the group, stayed a few minutes, consumed some beer and returned to the luncheon. Some of the employees went back inside the plant to eat more food. Because of Trojan's rules, none carried any alcohol with them. Trojan neither paid for, procured, nor provided any of these alcoholic beverages. The luncheon ended about 2 p.m. with the food being cleared away by approximately 2:30 p.m. At this time the plant manager and foreman locked the office and the plant gate and left the area. The plant manager and the foreman were aware employees were consuming alcohol in the parking lot.

After the luncheon was over and the gate locked, some of the Trojan employees remained in the Trojan parking lot where they drank beer and liquor. Barajas and a production supervisor were in this group.

The people in this group stayed outside the plant for several hours more. They continued to drink beer and a bottle of whiskey which Barajas had been given as a gift by a coemployee. Trojan did not pay for or supply any of these alcoholic beverages.

About 4 or 4:15 p.m., this group disbursed and went its separate ways. Barajas drove off in his pickup truck. The accident occurred shortly after Barajas left the group. His truck crossed the center line of Mt. Vernon Avenue in San Bernardino and struck plaintiffs' vehicle head on.

Blood samples taken from Barajas indicated he was under the influence at the time the accident occurred.

### I

■ It is conceded at the outset that Barajas was responsible for the accident causing plaintiffs' injuries. Therefore, the sole issue to be determined is whether the character of the luncheon and Trojan's relation to it were contributing factors in Barajas' voluntarily drinking in the parking lot and could reasonably be considered to be within the scope of his employment.

■ "In stating and assessing the facts in this case, we are guided by the traditional rule that a trial court may grant a defendant's motion for nonsuit only if plaintiffs' evidence would not support a jury verdict in plaintiffs' favor. [Citations.] '[T]he evidence most favorable to [plaintiffs] must be accepted as true.' [Citations.] Accordingly, we give 'to the plaintiffs' evidence all the value to which it is legally entitled . . . indulging every legitimate inference which may be drawn from the evidence in plaintiffs' favor. . . .' [Citation.] We disregard 'conflicting evidence' [citation], and inquire

whether the evidence, if 'viewed favorable to [plaintiffs'] cause, was sufficient to support a jury verdict' in their favor. [Citation.]" (*Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389, 395 [143 Cal.Rptr. 13, 572 P.2d 1155]; see also *Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112, 117-118 [184 Cal.Rptr. 891, 649 P.2d 224].)

" 'When, as here, the evidence at the close of the plaintiff's case is so palpably insufficient that the trial court determines that no verdict for plaintiff could be sustained, it is the duty of the court to forestall the cost and delay of further proceedings by granting defendant's motion for nonsuit. . . .' " (*Mikialian* v. *City of Los Angeles* (1978) 79 Cal.App.3d 150, 158-159 [144 Cal.Rptr. 794].)

█ "Under the doctrine of respondeat superior, an employer is liable for the torts of his employees committed within the scope of their employment. [Citation.] The burden of proof is on the plaintiff to demonstrate that the negligent act was committed within the scope of employment. (*Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 721 [159 Cal.Rptr. 835, 602 P.2d 755]; [Civ. Code, § 2338].) As a general rule, whether an act is within the scope of employment is a question of fact. However, where the facts are undisputed and no conflicting inferences are possible, the question is one of law. (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 963 [88 Cal.Rptr. 188, 471 P.2d 988]; *Golden West Broadcasters, Inc.* v. *Superior Court* (1981) 114 Cal.App.3d 947, 956 [171 Cal.Rptr. 95].) Here, there is no dispute over the operative facts and we deem the applicability of the doctrine of respondeat superior to be a matter of law." (*Munyon* v. *Ole's Inc.* (1982) 136 Cal.App.3d 697, 701 [186 Cal.Rptr. 424].) Similar to *Munyon* the case at bench provides no dispute as to the operative facts. Therefore, we conclude the trial court could properly determine Barajas was not within the scope of his employment as a matter of law.

█ Plaintiffs' injuries did not result from Barajas' normal activities as an employee of Trojan. The accident occurred while Barajas was driving his own vehicle after leaving Trojan's premises. The evidence in this case then must be such as to bring Barajas' activities within the exception to the going and coming rule, known as the "special errand" rule.

Plaintiffs contend Barajas' conduct falls within the special errand rule exception relying on *Boynton* v. *McKales* (1956) 139 Cal.App.2d 777 [294 P.2d 733], *McCarty* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 677 [117 Cal.Rptr. 65, 527 P.2d 617], and *Harris* v. *Trojan Fireworks Co.* (1981) 120 Cal.App.3d 157 [174 Cal.Rptr. 452]. Reliance on these authorities is misplaced. In *Boynton,* the employee had attended a banquet where he was invited by the employer for the purpose of receiving an award, the

banquet was paid for by the employer, the liquor was furnished by the employer, and the employee was expected to attend. In *McCarty*, the accident occurred when the employee was returning home from a drinking party on the employer's premises. The evidence showed the employer permitted recurrent drinking parties on the premises, purchased the liquor from the company accounts, and encouraged the activity as both a business and social gathering. Plaintiffs were before this court previously by way of demurrer. (*Harris, supra.*) We held the complaint sufficient to state a cause of action. In *Harris*, the allegations were Trojan held a Christmas party and caused its employees to attend during working hours; Trojan required its employees to attend; Trojan furnished the alcohol during the Christmas party; the employee became intoxicated at the party where Trojan caused him to imbibe large quantities of alcoholic beverages.[1]

The cases relied on by plaintiffs are not persuasive in this instance because each involve substantial employer participation. ■ Social functions must have this special ingredient in order to be an exception to the special errand rule. "The attendance at a social function, although not forming part of the normal duties of the employee, may come under the 'special errand rule' if the function or the attendance was connected with the employment and for a material part intended to benefit the employer who requested or expected the employee to attend." (*Boynton* v. *McKales, supra,* 139 Cal.App.2d 777, 789.) Whether we use the lesser standard of imposing liability on the employer under workers' compensation law for injuries suffered by his employees (*McCarty, supra*), or the greater standard of imposing liability on the employer in favor of the public in general for tortious acts of his employee under the doctrine of respondeat superior (*Boynton, supra*), the result is the same.

■ The undisputed facts of the case fail to show employer involvement sufficient to bring Barajas' conduct within the scope of his employment. There is no evidence to show that the drinking which took place in Trojan's parking lot was conceivably of any benefit to Trojan or that the drinking at work had become a customary incident of the employment relationship. Barajas, at the time of his drinking, was not performing any work-related service to Trojan. The drinking was neither required, nor an incident to his job as a disc gluer; it was purely for his own personal benefit, prompted by his own personal motivations, and was not remotely connected to his attendance at the potluck luncheon, where liquor was forbidden. There are no facts to show that Trojan furnished the food, required anyone to attend, paid anyone for attending, or served or furnished any alcoholic beverages

---

[1]Plaintiffs' complaint proves the old adage, "allegations in the complaint may put you in trial, but it's the evidence that keeps you there."

at the potluck luncheon. As a matter of law, the evidence failed to show that Barajas was acting within the scope and course of his employment at the time the accident occurred. The trial court properly granted the nonsuit. (See *Calrow* v. *Appliance Industries, Inc.* (1975) 49 Cal.App.3d 556 [122 Cal.Rptr. 636]; *Robbins* v. *Hewlett-Packard Corp.* (1972) 26 Cal.App.3d 489 [103 Cal.Rptr. 184].)

Plaintiffs' contention that Trojan ratified Barajas' conduct with full knowledge of his wrongful act is without factual support and consequently without merit.

The judgment is affirmed.

Morris, P. J., and Kaufman, J., concurred.