[Nos. D002552, D001527. Fourth Dist., Div. One. Apr. 1, 1986.]

LYNNETTE M. DUFFY et al., Minors, etc., Plaintiffs and Appellants, v. CITY OF OCEANSIDE et al., Defendants and Respondents.

**COUNSEL**

Kenneth L. Greenman, Jr., Helen H. Peak, Andreasen, Gore, Grosse, Greenman & Betz and William C. Halsey for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Marvin Goldsmith, Assistant Attorney General, Jeffrey T. Miller and Kristin G. Hogue, Deputy Attorneys General, Dennis W. Daley, Patricia A. Shaffer and Daley & Heft for Defendants and Respondents.

**OPINION**

**WIENER, J.**—This appeal involves the tragic murder of plaintiffs' mother by Joseph Larroque, a parolee of the state prison system, and arises out of plaintiffs' attempts to fix financial responsibility for that death on the State of California (State)—for failing to properly monitor Larroque's parole—and the City of Oceanside (City)—for employing Larroque and failing to warn the victim, also a city employee, of Larroque's dangerous propensities. The trial court concluded neither defendant owed a legal duty to the victim and accordingly sustained respective demurrers without leave to amend. As to the State, the court independently concluded that the immunity provisions of Government Code section 845.8 applied to bar plaintiffs' claim.

■■ ■■■■ After stating the facts as alleged in the complaint, we will address the issue of each defendant's liability separately.

## Factual and Procedural Background[1]

Laverne Duffy, the victim, was employed by the City in its engineering department. In August 1978 the City hired Joseph Larroque and also assigned him to the engineering department.[2] Larroque was on parole following three years in a state mental hospital and an additional four years in state prison after convictions for kidnapping, rape and sexual assault. The conditions of parole included that Larroque regularly report to a parole officer and take prescribed medication.

In September 1978 Duffy reported to her superiors that Larroque had sexually harassed her during working hours by touching parts of her body in a suggestive fashion without her permission. Despite these reports Duffy was never warned about Larroque's background. Circumstances changed, however. Beginning in January 1979 Duffy and Larroque developed a friendly work and social relationship which continued for some four and one-half years. The City knew of the development of this relationship but nonetheless failed to warn Duffy about Larroque.

On May 19, 1983, Larroque placed an inter-office call to Duffy regarding work-related matters. During the conversation, Larroque asked for Duffy's help in remedying a problem he had earlier in the morning with his car. Duffy agreed and apparently left the office with Larroque on her lunch break. Thereafter, Larroque kidnapped Duffy, taking her to his home where he stripped, bound and gagged her. After tying a self-tightening noose around her neck, Larroque left her to go back to work, intending to return later. While he was gone, Duffy strangled herself attempting to escape.

The defendants' demurrers to plaintiffs' first complaint were heard separately. Both were sustained—the City's with leave and the State's without leave to amend. The City's demurrer to plaintiffs' amended complaint was later sustained without leave and a judgment of dismissal entered on November 13, 1984.

### Discussion

The trial court resolved each of the demurrers by concluding that the defendant at issue owed no "duty" to the plaintiffs. We have previously expressed our concern that the "duty" concept is often more of a substitute

---

[1]We accept as true the facts as alleged in the complaint for the purposes of testing a demurrer. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].)

[2]The complaint alleges the City received compensation for hiring Larroque through the state and federal parolee employment incentive program.

for rather than an aid to reasoned analysis. (*Marois* v. *Royal Investigation & Patrol, Inc.* (1984) 162 Cal.App.3d 193, 197 [208 Cal.Rptr. 384].) ■ ■ ■ ■ In *Marois,* we observed that to the extent "duty" has independent value as an analytic tool rather than being simply a question-begging conclusion (see *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]; *Hucko* v. *City of San Diego* (1986) *ante,* pp. 520, 523 [224 Cal.Rptr. 552]), it is arguably relative to those "considerations of policy" which sometimes compel a rule of law precluding liability *"even when* the plaintiff's injury was caused by the defendant's failure to act reasonably."[3] (162 Cal.App.3d at p. 198, italics in original.) We specifically identified the common law rule that "one person owe[s] no duty to control the conduct of another" (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 435 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]) as an example of a doctrine based on such policy considerations. (*Marois, supra,* 162 Cal.App.3d at p. 199.) In the present case we must determine whether this common law exception applies to shield the State and City from liability for their allegedly unreasonable acts or whether, by virtue of the special relationship between defendants and either the victim (Duffy) or the perpetrator (Larroque), we must revert back to the general rule that a defendant is liable for all damage occasioned by its failure to exercise reasonable care.

Our inquiry into the circumstances under which a defendant may be liable for its failure to control or take precautions against the acts of third persons is guided by two significant Supreme Court decisions. In *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425, a patient receiving psychiatric treatment at a hospital operated and staffed by defendants revealed to his therapist that he intended to kill Tatiana Tarasoff. The patient later carried out his threat and Tatiana's parents sued defendants for wrongful death. The court began its analysis by reciting the general common law rule precluding liability for the harmful acts of third persons. (*Id.,* at p. 435.) Relying on Restatement Second of Torts section 315, however, the court goes on to explain that such a duty can "arise from either '(a) a special relation . . . between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation . . . between the actor and the other which gives to the other a right of protection.'" (*Ibid.*) Concluding that such a special relation existed between

---

[3]We opined in *Marois* that duty analysis can be both confusing and confused because courts also employ a duty rubric to analyze questions involving the reasonableness of the defendant's conduct. (*Id.,* at p. 198.) Whether a duty has been breached, however, is a decidedly different question from whether a duty exists. A determination that the defendant acted reasonably necessarily assumes he was under a "duty" to do so.

the patient and his therapist, the *Tarasoff* court held that defendants could be liable for their failure to warn or otherwise protect Tatiana.[4]

Relying on a similar special relationship between the defendant and a third person murderer, the plaintiffs in *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701] sought to recover from the defendant county following its release of a juvenile offender, James F., who then killed plaintiffs' minor son. Before his release to his mother's custody, James threatened to kill an unidentified child in the neighborhood. Plaintiffs alleged the county had a duty to warn the local police, the neighborhood parents or James' mother regarding the nature of James' threat. A majority of the California Supreme Court rejected plaintiffs' contentions, holding that, at least in the context of third persons posing a threat of criminal behavior, any duty of a public agency to warn does not arise absent the identification of a specific victim. (*Id.*, at p. 754.)

*Liability of the State of California*

Plaintiffs in the present case respond to the *Tarasoff-Thompson* analysis by emphasizing that their complaint against the State does not rely on any failure to *warn* anyone. Rather, this is a simple allegation of the State's failure to *control* Larroque in the sense of failing to properly supervise his parole. Plaintiffs thus claim that *Thompson's* requirement of an identifiable victim has no application to a failure-to-control case.

Plaintiffs' position exhibits a certain logic. ▮ Where a special relationship between the defendant and a third person gives rise to a duty on defendant's part to control the third person (Rest.2d Torts, § 315, subd. (a)), a warning to foreseeable victims is only one of many ways the defendant can discharge that duty. Depending on the circumstances, it may be reasonable for the defendant to restrain or otherwise directly control or influence the third person. (See *Tarasoff, supra*, 17 Cal.3d at p. 436 and fns. 7 and 8; *Myers* v. *Quesenberry* (1983) 144 Cal.App.3d 888, 894 [193 Cal.Rptr. 733].) Clearly liability for negligence in such cases cannot be avoided merely because there is no specific identifiable victim. Putting aside questions of governmental immunity (see *County of Sacramento* v. *Superior Court* (1972) 8 Cal.3d 479 [105 Cal.Rptr. 374, 503 P.2d 1382]), it seems pointless to argue that prison officials who negligently allow a dangerous

---

[4]The holding in *Tarasoff* is subject to some confusion due to the citation of subdivision (b) of section 315. It is nonetheless clear that defendants' duty to Tatiana did not arise from a subdivision (b) relationship but rather by virtue of its subdivision (a) relationship with the psychiatric patient. (*Id.*, 17 Cal.3d at p. 436.) In reality, defendants' duty is not fundamentally one of protection but instead one of controlling their patient. It is simply that in the context of the *Tarasoff* facts, that duty could most easily be discharged by warning Tatiana.

felon to escape have no "duty" to control the felon absent some previously identifiable victim the escaped felon will likely seek to harm.

Nonetheless several California appellate court cases have arguably attempted to extend the *Thompson* reasoning to duty-to-control cases. In *McDowell* v. *County of Alameda* (1979) 88 Cal.App.3d 321 [151 Cal.Rptr. 779], a decision which preceded *Thompson* by a year, defendant hospital and doctors determined that Gregory Jones was mentally ill and constituted a danger to himself and others. In transferring Jones to another hospital, defendants negligently placed him in a taxicab rather than in a ambulance or other form of transportation where Jones could be more easily controlled. As a result, Jones escaped and two days later killed plaintiffs' decedent. The court held that plaintiffs had not stated a cause of action because there was "no allegation that Jones was a threat to the decedent, nor is there any allegation that any particular person or group of people would be harmed by the release of Jones. [Defendants] do not owe a duty to society because Jones' behavior may constitute a danger to any person." (*Id.,* at p. 325.)

*McDowell* was followed in *Hooks* v. *Southern Cal. Permanente Medical Group* (1980) 107 Cal.App.3d 435 [165 Cal.Rptr. 741], a post-*Thompson* case. There, plaintiff alleged an employer had a duty to control, as well as a duty to warn of, a dangerously disturbed employee. (*Id.,* at p. 443.) The court rejected plaintiff's contention, holding that the special relationship between the defendant and the third person must put the defendant "on notice that a specific, rather than a generalized, risk exists . . . [and] that the target of the risk is an identifiable and foreseeable victim." (*Id.,* at p. 444; see also *Megeff* v. *Doland* (1981) 123 Cal.App.3d 251, 257 [176 Cal.Rptr. 467].) *Hooks* has been relied on by the Ninth Circuit Court of Appeals for the proposition that the "need for foreseeable identification of the victim [extends] to cases involving the duty to control as well as the duty to warn." (*Vu* v. *Singer Co.* (9th Cir. 1983) 706 F.2d 1027, 1029.)

■ Despite our concerns with the reasoning of *McDowell* and *Hooks,* we are fortunately not required to decide whether to directly disagree with those decisions because the trial court in the present case articulated an unassailable independent ground for its decision to sustain the demurrer.[5] Government Code section 845.8 provides: "Neither a public entity nor a public employee is liable for: (a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke

---

[5]We have discussed the foregoing "duty" issues not only because the trial court relied on that theory but also to heed the Supreme Court's admonition to keep the "duty horse" in front of the "immunity cart." (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 22 [192 Cal.Rptr. 233, 664 P.2d 137].)

his parole or release." The trial court concluded that this provision in the Tort Claims Act immunized the State for any liability arising from its negligent failure to supervise Larroque's parole.

Relying on *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], plaintiffs argue that only discretionary decisions are protected by the immunity cloak of section 845.8. They contend the alleged negligence in this case involves the merely ministerial function of properly supervising Larroque's parole. This distinction, however, at least in the context of correctional activities, was questioned by the Supreme Court in *County of Sacramento* v. *Superior Court, supra,* 8 Cal.3d at p. 485: "Ministerial implementation of correctional programs . . . can hardly, in any consideration of the imposition of tort liability, be isolated from discretionary judgments made in adopting such programs." Applying this principle, the court in *Thompson* v. *County of Alameda, supra,* 27 Cal.3d 741, 748-749 rejected plaintiffs' contention that the County's supervision of James' mother's custody was a ministerial function not immunized by the statute.

Even more decisive is this court's decision in *Martinez* v. *State of California* (1978) 85 Cal.App.3d 430 [149 Cal.Rptr. 519]. Martinez' fourth cause of action alleged that the State failed to properly supervise a parolee who kidnapped and murdered his daughter. Citing *County of Sacramento, supra,* 8 Cal.3d 479, we rejected Martinez' contention that parole supervision was merely the ministerial implementation of a discretionary correctional decision and held that the immunity provided for in section 845.8 was fully applicable. (*Id.,* at p. 436.) Contrary to plaintiffs' assertion, we find no confusion or ambiguity in the *Martinez* holding and conclude it compels affirmance of the trial court judgment here in favor of the State.

*Liability of the City of Oceanside*

Plaintiffs' allegations against the City present significantly different questions. Here, plaintiffs rely on subdivision (b) of Restatement Second of Torts section 315 for the proposition that the employment relationship between Laverne Duffy and the City gave rise to a duty on the part of the City to take reasonable steps to protect its employee.[6] (See *ante,* p. 670.)

---

[6]In a second cause of action, plaintiffs allege that the City is vicariously liable for Larroque's actions by virtue of the doctrine of respondeat superior. We reject their argument because there is no reasonable argument here that Larroque's actions were within the scope of his employment. (*Alma W.* v. *Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 139 [176 Cal.Rptr. 287].) The fact that the risk of misconduct by an employee is foreseeable

Were the substance of plaintiffs' complaint simply that the City was obliged to warn all female employees who might come in contact with Larroque of his prior criminal conduct, we would be unpersuaded. While others might phrase this conclusion in terms of the lack of a duty to warn, we prefer to say that such a complaint, without more, would fail to state facts from which a reasonable jury could conclude the City acted negligently. The mere fact that Larroque had been convicted of assaults on two women at least seven years earlier—for which he had served time in prison and been treated in a mental hospital—gives rise to an insufficiently strong inference that he would repeat similar criminal behavior. Balanced against this are the negative effects of a warning to fellow employees. Not only would such a warning have caused perhaps unnecessary anxiety for those warned but, more importantly, knowledge of Larroque's past by his co-workers might have prejudiced any chance he had to lead a normal life. Even if such a warning did not cause his fellow employees to ostracize Larroque, he would have been "different" and treated accordingly. There is a serious danger that a warning will become a self-fulfilling prophecy, stigmatizing the parolee and causing him to be reminded he is not normal. (See *Thompson* v. *County of Alameda, supra,* 27 Cal.3d at p. 757.) We thus do not say that the decision to employ a parolee does not involve any risk but only that the benefits to be gained by warning of that risk do not outweigh the burdens thereby engendered. (See *Johnson* v. *State of California, supra,* 69 Cal.2d at p. 786, fn. 2.)

Plaintiffs' allegation in the present case, however, is not based simply on the failure to warn all employees at the time the City hired Larroque. They additionally allege that Duffy reported to her supervisors that she had been sexually harassed by Larroque shortly after he was hired. (See *ante,* p. 669.) If known to the City, these facts strengthen the inference that Larroque might repeat his earlier criminal conduct and suggest Duffy as a possible victim. Under such circumstances we believe it becomes a question of fact as to whether the City acted reasonably in failing to respond to Duffy's report of harassment by alerting her in some manner to Larroque's past conduct.

Plaintiffs have specifically alleged that had Duffy been warned, she would never have developed any relationship with Larroque. While we admit that serious questions of causation are presented where the killing takes place some four and one-half years after the warning allegedly should have been given, they are questions which cannot be resolved on demurrer but must

in the traditional negligence sense does not in and of itself make the employer vicariously liable. (*Id.,* at p. 141; see also *Harris* v. *Trojan Fireworks Co.* (1984) 155 Cal.App.3d 830 [202 Cal.Rptr. 440].) Accordingly, the City's demurrer as to the second cause of action was properly sustained.

await inquiry into the nature of the relationship between Duffy and Larroque. Plaintiffs have alleged facts from which a jury could conclude that the City should have warned Duffy following her reports of harassment by Larroque and that the failure to warn was a substantial factor in causing her death. (See *Myers* v. *Quesenberry, supra,* 144 Cal.App.3d at p. 895.)

The City responds by citing *Thompson* v. *County of Alameda, supra,* 27 Cal.3d at p. 758 and *Johnson* v. *County of Los Angeles* (1983) 143 Cal.App.3d 298, 311 [191 Cal.Rptr. 704] for the proposition that "the duty to warn depends upon and arises from the existence of a prior threat to a specific identifiable victim." It argues that because Larroque never threatened to harm Duffy, the City cannot be liable for its failure to warn. We do not read *Thompson* and *Johnson* so narrowly. *Thompson* makes clear the statement quoted above is intended to apply only "[w]ithin this context . . ."—that is, in cases involving a public entity's liability for release of a ,potentially dangerous offender. (27 Cal.3d at p. 758.) Moreover, the next sentence of the court's discussion makes clear that the concept of "threat" refers to any predictable threat *to* the victim and not merely a threat *by* the perpetrator.[7] Here, while Larroque made no verbal threats to Duffy, his harassment of her coupled with his prior criminal conduct made the "threat" to Duffy reasonably foreseeable. Whether the magnitude of that threat required the City to warn Duffy, i.e., whether the City was negligent, is a question of fact.

## DISPOSITION

In case number D002552, the judgment is reversed to the extent it is based on the sustaining of the City's demurrer to the first cause of action. In all other respects, the judgment is affirmed. Plaintiffs shall recover costs. In case number D001527, the judgment is affirmed. The State shall recover costs.

Staniforth, Acting P. J., and Work, J., concurred.

---

[7]The court rephrases its conclusion as follows: "In those instances in which the released offender poses a predictable threat of harm to a named or readily identifiable victim or group of victims who can be effectively warned of the danger, a releasing agent may well be liable for failure to warn such persons." (27 Cal.3d at p. 758.)